UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT JOHN HEINTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16 CV 1894 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Vincent John Heintz brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Heintz's severe physical and mental impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Heintz protectively filed applications for DIB and SSI on December 4, 2015, claiming that he became unable to work on September 1, 2015, because of a right knee replacement, left knee

pain, back problems, neck problems, and depression. (Tr. 79.) Heintz was 43 years of age on his alleged onset of disability date. *Id.* His claims were denied initially. (Tr. 99-104.) Following an administrative hearing, Heintz's claims were denied in a written opinion by an ALJ, dated September 21, 2016. (Tr. 16-25.) Heintz then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on October 4, 2016. (Tr. 12, 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Heintz first argues that he "meets or medically equals the Listing at § 1.03 of 20 C.F.R. Part 404, Subpart P, Appendix 1." (Doc. 16 at 11.) He next claims that the ALJ "did not fulfill her duty to develop the medical record, which duty exists whether or not a claimant is represented." *Id.* at 13. Finally, Heintz argues that the ALJ "failed to analyze plaintiff's credibility consistent with applicable law and SSA's own rules and regulations." *Id.* at 15.

## II. The ALJ's Determination

The ALJ first noted that Heintz met the insured status requirements of the Social Security Act through December 31, 2017, and has not engaged in substantial gainful activity since September 1, 2015, his alleged onset date. (Tr. 18.)

In addition, the ALJ concluded that Heintz had the following severe impairments: status-post right total knee replacement, bilateral osteoarthritis of the knees, sleep apnea, obesity, and hypertension with edema. (Tr. 18.) The ALJ found that Heintz did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Heintz's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20CFR 404.1567(a) and 416.967(a) except: lift, carry, push and pull 10 pounds frequently and less than 10 pounds frequently; sit a total of six hours in an eight-hour workday; stand and walk two hours total in an eight-hour workday; and never operate foot controls bilaterally. The claimant would need to elevate his legs up to 18 inches while sitting and require a stick, cane or other assistive device for ambulation while at his workstation. The claimant can no more than occasionally climb ramps and stairs; never climb ropes, ladders and scaffolds; never kneel or crawl; no more than occasionally stoop or crouch; and never work at unprotected heights or with or around hazardous machinery.

(Tr. 19.)

The ALJ found that Heintz's allegations regarding the extent of his limitations were not entirely credible. (Tr. 22.) In determining Heintz's RFC, the ALJ indicated that she was assigning "great weight" to the opinions of treating physician Sunny Desai, M.D. (Tr. 21.)

The ALJ further found that Heintz was unable to perform past relevant work, but was capable of performing other jobs existing in the national economy, such as addresser, document preparer, and press clipping cutter/paster. (Tr. 24-25.) The ALJ therefore concluded that Heintz was not under a disability, as defined in the Social Security Act, from September 1, 2015 through the date of the decision. (Tr. 25.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on December 4, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on December 4, 2015, the claimant is not disabled

under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the

claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security

Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the

appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

As previously stated, Heintz challenges the ALJ's determination that Heintz did not meet or equal a Listing. He also argues that the medical record required further development, and that the ALJ erred in discrediting his subjective allegations. The undersigned will discuss Heintz's claims in turn.

**1.     Listing 1.03**

Heintz argues that he met or medically equaled Listing 1.03, for "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 1.03. He contends that the ALJ erred in failing to consider this listing.

The ALJ found that Heintz did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Doc. 18.) She stated that she had considered Listings 1.02 (major dysfunction of a joint) and 3.10 (sleep-related breathing disorders). *Id.* The ALJ further noted that she had considered the effects of Heintz's obesity, although obesity was not mentioned in the listings. (Tr. 19.) She stated that "[o]bjective medical findings establish that the claimant can effectively ambulate as set forth under 1.00B2b." *Id.*

The ALJ's decision that Heintz did not have an impairment or combination of impairments that met or medically equaled a listed impairment is supported by substantial evidence. The claimant bears the burden of proving his impairment meets or equals the criteria for a specific listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Brown ex rel.*

*Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted). Where the claimant suffers from an unlisted impairment, the ALJ must compare the claimant's impairment with an analogous listed impairment. 20 C.F.R. §§ 404.1526, 416.926. Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments ... m[et] or are equivalent to any of the listed impairments." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). While it is preferable for an ALJ to address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion. *See Pepper ex rel. Gardner v. Barnhart*, 342 F.3d, 853, 855 (8th Cir. 2004), *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").

To meet Listing 1.03, Heintz has to show he had "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 1.03. An "[i]nability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00(2)(b)(1).

The ALJ's decision that Heintz did not have an impairment or combination of impairments that met or equaled a listed impairment is supported by substantial evidence. Although the ALJ

did not specifically cite Listing 1.03, she did make the finding that "objective medical findings establish that the claimant can effectively ambulate as set forth under 1.00B2b." (Tr. 19.) Later in her opinion, the ALJ discussed the objective medical evidence following Heintz's knee surgery. A summary of this evidence is provided below.

The ALJ acknowledged that Heintz underwent a right total knee replacement without complications on November 17, 2015, performed by Robert Barrack, M.D. (Tr. 20, 272.) On December 14, 2015, Dr. Barrack noted that the incision was well-healed; he had no limp; his range of motion was 5 to 95 degrees, with normal alignment and stability; he used a cane; and his neurovascular status was intact. (Tr. 270.) Heintz presented to treating physician Sunny Desai, M.D., the following day, at which time Dr. Desai stated he was "progressing well" following surgery. (Tr. 312.) On physical exam, Dr. Desai noted 1+ right leg edema, and trace ankle edema on the left. (Tr. 312.) On January 25, 2016, Dr. Barrack found that Heintz had a "mild limp;" range of motion of 0 to 120 degrees, with "excellent" alignment and stability; and he used a cane. (Tr. 401.) He noted that, although Heintz complained of his leg giving way, he was "completely stable to exam in extension, midflexion and full flexion." *Id.* Dr. Barrack recommended that Heintz continue routine outpatient physical therapy. *Id.* On March 21, 2016, Dr. Desai again noted that Heintz was "progressing well." (Tr. 414.)

Heintz presented to Dr. Desai on May 31, 2016, with complaints of pain in his right ankle, left elbow, wrist, and shoulder, after falling down some stairs. (Tr. 21, 409.) X-rays of the right ankle revealed soft tissue swelling without visible fractures. (Tr. 410.) Dr. Desai diagnosed Heintz with right ankle sprain, and recommended use of ice and anti-inflammatories when necessary. *Id.*

Heintz saw Dr. Barrack for follow-up on July 25, 2016, at which time he complained of swelling in both legs below the knee and muscle spasms in the right thigh muscle. (Tr. 21, 434.) Upon physical examination, the incision was well-healed with no redness, erythema, or drainage; he had good arc of motion, 0-110 degrees; no instability with stress testing; intact neurovascular status; and pitting edema up to and above the knee. *Id.* Radiographs revealed "excellent component alignment and fixation with no interval change." *Id.* Dr. Barrack diagnosed Heintz with "good result following total knee replacement." *Id.* He stated that Heintz's symptoms seemed to be related to the pitting edema, and that he was seeing a cardiologist for management of the fluid retention and a pain management physician for the persistent pain and spasms. *Id.* Dr. Barrack stated that there was no further treatment indicated for the knee replacement, noting that it "appears excellent on x-ray and has excellent alignment and fixation, and the pain is really not in the vicinity of the knee joint itself." *Id.* He recommended that Heintz return every two to three years for routine follow-up of the knee replacement. *Id.*

On August 3, 2016, Heintz saw Farhaan A. Ahmad, M.D., at St. Anthony's Heart Specialty Associates, for evaluation of increasing dyspnea and bilateral lower extremity edema. (Tr. 21, 431.) Dr. Farhaan noted that Heintz's medical history was significant for obesity, obstructive sleep apnea with noncompliance with CPAP therapy, and hypertension. *Id.* Heintz's lower extremity and dyspnea symptoms had been progressive with his multiple knee surgeries and increasing weight. *Id.* He was 5 feet 8 inches tall, and weighed 300 pounds. *Id.* Heintz had been dyspneic with minimal activity and noted associated chest tightness. *Id.* His lower extremity edema symptoms worsened at the end of the day. *Id.* As a result of his edema and knee osteoarthritis, Heintz had had been less physically active and had gained a significant amount of weight. *Id.* Dr. Ahmad noted that a venous study conducted the previous year did not reveal

venous ablation, but recommended repeating the study. (Tr. 432.) Dr. Ahmad found that Heintz's dyspnea was likely related to "combination of obesity and chronic deconditioning," although he recommended further evaluation with an echocardiogram. *Id.* He advised Heintz regarding the importance of compliance with CPAP therapy and weight loss. *Id.* Heintz underwent a second venous reflux study on August 15, 2016, which showed no evidence of deep or superficial thrombosis in the bilateral lower extremities. (Tr. 21, 449.)

The ALJ noted that, in a medical source statement dated August 23, 2016, Dr. Desai indicated that Heintz "has hypertension and leg edema and should keep his legs elevated when he is sitting or resting." (Tr. 21, 456.)

Heintz argues that the ALJ minimized his complaints to treating sources of chronic leg and back pain, and knee and leg swelling. The ALJ, however, recounted Heintz's complaints of pain and swelling in summarizing the medical evidence discussed above. There is no evidence that Heintz was unable to walk without the use of a walker, two crutches, or two canes. Notably, Dr. Barrack found that Heintz had no limp only approximately one month following surgery, and a "mild" limp the next month. (Tr. 270, 401.) Dr. Barrack also noted Heintz's well-healed incision, good range of motion, and excellent alignment and fixation. *Id.* Despite Heintz's subsequent symptoms of pain and swelling, the record contains no evidence that Heintz was unable to effectively ambulate as required by section 1.00(B)(2)(b) of the regulation. As such, Heintz did not meet his burden of establishing he met Listing 1.03.

Heintz next argues that, even if he did not meet the requirements of Listing 1.03, he medically equaled the Listing due to his obesity. "To establish equivalency, a claimant 'must present medical findings equal in severity to all the criteria for the one most similarly listed impairment.'" *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016) (quoting *Sullivan v. Zebley*, 493

U.S. 521, 531 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D. N.Y. 2001)).

The ALJ found that Heintz's obesity was a severe impairment, and specifically considered its effects in determining medical equivalence. (Tr. 19.) The ALJ found that Heintz's obesity was not equivalent to a Listing because Heintz can effectively ambulate. As previously discussed, the ALJ's determination that the objective medical evidence did not establish Heintz's inability to ambulate effectively is supported by substantial evidence.

Thus, the ALJ did not err in finding Heintz does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

## 2. Credibility and RFC

Heintz argues that the ALJ erred in assessing the credibility of Heintz's subjective complaints of pain and limitations.[1] He further argues that the ALJ did not fulfill her duty to develop the record as to Heintz's RFC.

As a general matter, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will defer to her decision. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). In evaluating Plaintiff's credibility regarding the extent of his symptoms, the ALJ must consider all of the evidence, including objective medical evidence, and evidence relating to the

---

[1] Heintz only challenges the ALJ's findings with regard to his physical impairments. The Court notes that Heintz also alleged depression as a disabling impairment. The ALJ found that Heintz's depression was non-severe. Because Heintz does not challenge this determination, the Court will limit its discussion to Heintz's physical impairments.

factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) Plaintiff's functional restrictions. *See Julin*, 826 F.3d at 1086; *see also* 20 C.F.R. § 416.929(c). The ALJ does not need to discuss each factor separately; rather, the court will review the record as a whole to ensure relevant evidence was not disregarded by the ALJ. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011); *see also Dunahoo*, 241 F.3d at 1038 ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.").

Here, the ALJ properly discounted Heintz's credibility based upon the lack of supporting objective medical evidence, noncompliance with treatment recommendations, and other inconsistencies in the record.

The ALJ first noted that, on February 20, 2015, less than seven months before the alleged onset of disability date, Heintz requested a letter from Dr. Desai to give to a prospective employer stating that he could use his legs without restrictions and lift 100 pounds. (Tr. 22, 335.) Dr. Desai authored the requested letter. (Tr. 335.) The ALJ acknowledged that Heintz's physical condition deteriorated after this time, yet nonetheless found the evidence inconsistent with Heintz's allegations of complete disability beginning in September of 2015. (Tr. 22.)

The ALJ discussed Heintz's testimony that he spends most of his day lying down and watching television, is incapable of standing to rinse off a dish, and that it would take him 45 minutes to put on his socks. (Tr. 22, 45, 54-58.) She stated that there was no support in the record of limitations to this degree. (Tr. 22.) An ALJ may consider the lack of objective medical

evidence supporting a plaintiff's subjective complaints as one factor in assessing credibility. *Forte v. Barnhart,* 377 F.3d 892, 895 (8th Cir. 2004).

The ALJ next noted that no examining or treating physician expressed an opinion that Heintz was precluded from all work activity. Rather, in his August 2016 medical source statement, Dr. Desai stated only that Heintz should keep his legs elevated when sitting or resting. (Tr. 22, ) Dr. Barrack found that Heintz required no further treatment for his knee in July 2016. (Tr. 434.) The lack of significant limitations set out by treating and examining physicians is relevant to a determination of disability. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

With respect to Heintz's sleep apnea, the ALJ noted that Heintz has been non-compliant with his CPAP therapy, citing Dr. Ahmad's August 2016 treatment notes. (Tr. 22, 431.) She stated that this noncompliance was inconsistent with Heintz's complaints of excessive daytime sleepiness secondary to an inability to sleep at night. The ALJ properly found this evidence detracted from Heintz's credibility. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (noncompliance with a physician's directions or prescribed treatment is a valid reason to discredit a claimant's subjective allegations); 20 C.F.R. § 404.1530(a-b) (failure to follow a prescribed course of treatment without good reason precludes a finding of disability).

The ALJ further found that there was nothing in the medical evidence of record to support that Heintz complained to his treating physicians that he was experiencing severe functional limitations due to his sleep apnea. (Tr. 22-23.) The ALJ pointed out that Heintz testified that he lost his job on August 28, 2015, because he was falling asleep at work. (Tr. 23, 38.) The ALJ accurately stated that the absence of evidence in the medical records of complaints of falling asleep during the day detracted from the credibility of his allegation of disability on this basis.

In summary, the ALJ gave good reasons for discounting Heintz's subjective complaints.

Thus, the ALJ's decision in this regard will not be disturbed. *See Julin*, 826 F.3d at 1086 (noting the deference due to an ALJ's credibility determination); *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

The ALJ then determined Heintz's RFC. She found that Heintz was capable of performing sedentary work with the following additional limitations:

> lift, carry, push and pull 10 pounds frequently and less than 10 pounds frequently; sit a total of six hours in an eight-hour workday; stand and walk two hours total in an eight-hour workday; and never operate foot controls bilaterally. The claimant would need to elevate his legs up to 18 inches while sitting and require a stick, cane or other assistive device for ambulation while at his workstation. The claimant can no more than occasionally climb ramps and stairs; never climb ropes, ladders and scaffolds; never kneel or crawl; no more than occasionally stoop or crouch; and never work at unprotected heights or with or around hazardous machinery.

(Tr. 19.)

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of his limitations. *Dunahoo,* 241 F.3d at 1039. Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer,* 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue,* 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).

Heintz argues that the ALJ erred in failing to further develop the record by ordering a consultative examination or seeking clarification from Dr. Desai. He contends that the ALJ

instead "played doctor" and drew inferences from the medical records, resulting in a RFC that is unsupported by substantial evidence.

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011).

The ALJ is only required to order further medical examinations where a "critical issue is undeveloped" and the existing medical record does not provide "sufficient medical evidence to determine whether the claimant is disabled." *Martise*, 641 F.3d at 926-27. In this case, Heintz has not established that such an issue is underdeveloped.

In determining Heintz's RFC, the ALJ indicated that she was assigning "great weight" to the opinion of Dr. Desai that Heintz has hypertension and leg edema and should keep his legs elevated when sitting or resting. (Tr. 21.) The ALJ noted that Dr. Desai did not state that Heintz was incapable of working, nor did he impose any other limitations. *Id.* She explained that Dr. Desai's opinion was entitled to great weight because it was provided by a doctor who has treated Heintz over a significant period of time and the opinion was consistent with the record. *Id.* With regard to Heintz's knee impairment, the ALJ pointed out that Dr. Barrack's July 2016 records reveal Heintz had good range of motion, no instability, excellent alignment and fixation on x-ray,

and that he did not require further treatment for his knee replacement. (Tr. 22.) The ALJ stated that she recognized that Heintz experienced lower extremity edema, "[h]owever, the necessity for the claimant to limit walking and standing and the need to elevate his legs while sitting have been considered." *Id.* She concluded that these functional limitations "have been taken into account in the above sedentary residual functional capacity assessment with the further requirement of elevating his legs while sitting presented to the vocational expert who still identified jobs the claimant is able to perform." *Id.*

The undersigned finds that substantial evidence on the record as a whole supports the ALJ's RFC decision. *See Buford v. Colvin*, 824 F.3d 793, 796-97 (8th Cir. 2016) (ALJ did not err in failing to obtain an opinion from a treating or consultative doctor where RFC was based on state agency medical consultants' assessments and claimant's medical records that showed examination and treatment by various medical providers over a two-year period). The ALJ's determination is supported by the opinion of Dr. Desai, the treatment notes of Dr. Barrack, and the remaining medical evidence of record. The undersigned further notes that State agency physician Donna McCall, D.O., found that Heintz was capable of lifting 20 pounds occasionally and 10 pounds frequently; and could stand or walk 6 hours in an 8-hour workday. (Tr. 84-85.) The ALJ's RFC determination was significantly more restrictive in that she limited Heintz to lifting no more than ten pounds, standing or walking no more than two hours; and imposed the additional limitations of elevating his legs up to 18 inches while sitting and requiring a stick, cane or other assistive device for ambulation while at his workstation.

In sum, the ALJ assessed Heintz's physical RFC based on the treatment notes of Heintz's physicians, the objective imaging, and Heintz's testimony. The ALJ performed a proper credibility determination and found Heintz's allegations of total disability were not entirely

credible. Heintz did not meet his burden to establish a more restrictive RFC. The record, when considered as a whole, supports a conclusion that Heintz is capable of performing a limited range of sedentary work. The fact that the record might also support a contrary conclusion is not a basis for reversing the ALJ's decision in this case. *See Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016); *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

The hypothetical question the ALJ posed to the vocational expert (VE) was based on the RFC formulated by the ALJ, which accounted for all of Heintz's credible limitations. Consequently, the hypothetical question posed to the VE was proper. *See Martise,* 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting *Lacroix v. Barnhart,* 465 F.3d 881, 889 (8th Cir. 2006)).

Accordingly, Judgment will be entered separately in favor of the Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of March, 2018.